Turn the page. We'll take a second. Turn. Turn the page. Turn the page.  It's an excuse to be an arse. On the stage, just turn. Turn the page. Turn the page, yeah. Turn the page. Sorry, it'll take me a minute to get my right.  Get the papers before me. Turn. Turn. Turn.  The next case on the argument docket is... Is that Galvez? Galvez v. Dudek. Bring that closer. Put that there. Put that on the left side. Just one page. Go ahead. Bob can proceed. Good morning. I'm Sonia Carson. I'm representing the government in this case. Could you adjust the mic? You're speaking very softly. Good morning. I'm Sonia Carson. I'm representing the government in this case. I understand that the court has allotted 15 minutes per side for argument, and I'd like to reserve five minutes for rebuttal, if I may. Five minutes out of your 10? Pardon me. It's set for 10. It is set for 10, and in that case, three minutes, please. Okay. Good morning. Please proceed. Lydia Galvez in this case received everything that the Supreme Court in Lucia and this court in Cody required, a new hearing before a new ALJ who no one disputes was properly appointed and had not previously been involved in her case. That should be the end of the matter. Why would that be the end of the matter after Cody? We're really looking for was there a fresh look? Did somebody take a fresh look? I think the government's position is if there's a new hearing with a new ALJ, we're good. Why is that sufficient? I heard two questions, and so let me take the last one first. The government's position here is that when a properly appointed decision-maker states that he or she is making a decision de novo pursuant to the instructions to which that decision-maker is always subject, that the presumption of regularity would give us no reason to look behind that decision to conclude. Presumption is one thing. But what you just said I took to maybe I'm listening or reading your brief too literally. Presumption is one thing. But I think what you're arguing in your brief is that as long as we've got a new ALJ and a new hearing, our analysis should end. That's different. Well, here we have an accusation that despite the proper appointment, that as a matter of the appointments clause, there continues to be an error because ALJ Myers found useful some of the language that also appeared in ALJ Kennedy's decision. And so here, just as in Cody, the government is responding to an argument from the other side, and I think that's critical to understanding the court's discussion in Cody of linguistic similarity. Well, I think that it just isn't, again, I'm one of three. But it seems that both of the extreme positions here are the wrong answer, and the district courts are sort of struggling with this. Where's the sweet spot? What does Cody mean? What's it take to show that there's an independent, fresh look? And so what do you think that the answer should be? Well, my first answer is that Cody is distinguishable because Cody involved two decisions by the same person. I appreciate that. But post-Cody, what should the answer be? Is it really the case? And I've been pretty clear about conveying skepticism, that it's enough to just say, okay, now we've got a new ALJ and now we've got a new hearing. Because that could be an entirely repurposed opinion, and I think the government's position would allow that. So the government's position is, as a matter of the appointments clause, the question whether the remedy in Lucia and Cody has been received, the opinion could indeed resemble exactly the prior opinion. But the question is whether, when that opinion is challenged, there is reason to think that the new ALJ, who is properly appointed, has evinced the kind of closed mind that could preclude categorically de novo review, and that's simply not what we have here. Okay, counsel, that's exactly what I'm tending you to focus on. What is it that we should be looking at? I think Judge Tolman is going to ask this. Yeah, I guess this is a question really for both of you. I don't understand how this is any different from a district judge reviewing a report and recommendation from a magistrate judge and saying, I've reviewed the report and recommendation and I affirm it. We don't require the district judge to add additional language that explains how the district judge did his or her homework. Maybe this is the presumption of regularity. We assume that what the district judge says, I gave it an independent look. That's exactly what the district judge did. So how is this different, if it is different? The government's position is that it is not different, and the reason that I'm talking about the passages, for example, where ALJ Meyer says, I find that the impairments are non-severe, is because there has been a question raised as to whether or not this truly was a de novo review. And the reason for that question, right, is about 40% of it, about eight pages, really is almost verbatim. So if you could engage in that, that would be helpful. Sure. On the literal question whether or not if we applied CODI as establishing an independent test requiring some degree of dissimilarity in the opinions, which I think, again, is a matter of the appointments clause, is clearly incorrect and well beyond the facts of CODI. What we have here is an opinion that shared 1,431 words. Out of an 11,000-word opinion, I haven't counted how many are he or she or that or this. The point, I think – Does it matter whether – It's not going to be a word count test, right? If it focused on the procedural history of the case, would that make a difference? So according to Ms. Galvez, it makes all the difference. The only part of the – On the government's position. The government's position is, as Judge Tallman has articulated it, with the addition to your point that in the event that the independent nature of the new, different person, ALJ's judgment, is questioned, that at least here there can be no doubt under any reading of CODI that independent judgment is, in fact, what ALJ Myers brought to this case. And you can see that in his statement. You can see that also in his discussion. I think Ms. Galvez rightly concedes that there's no problem and certainly no appointments clause problem with an ALJ finding useful material that appeared in a factual background or a procedural summary. What you're doing is you're restating your conclusion. And I'm not telling you that I disagree with your conclusion, but I am trying to suggest quite overtly, I think, that not all the district court judges understand CODI the way you do. And our job is to try to provide guidance if we can and to try to be helpful. So it seems to me, for example, to follow up on Judge Tallman's point, that repurposed passages that go to the history of the case or the procedural history or the medical history, facts that haven't changed should not give me cause for pause about whether this person got a new, fresh look. I think that's undisputed. Ms. Galvez herself takes that point. If you don't want to engage and try to help me flesh out, I'm not going to go any further, but I did want to give you every opportunity to provide input on what the new test should be. The test should be, and the government's position is that the extent and limit of CODI is that CODI applies only in circumstances where there is not a literal new human who has been properly appointed deciding the case if this court were to. Your argument is that if we look at the opinion in its totality as opposed to concentrating on the 1,100 words or whatever it is out of the sum total, that we should take comfort in the fact that the second administrative law judge gave it a full and independent review. Our position is that because the second ALJ said that he was giving it an independent view and because he is instructed, as a matter of the HALACs and as a matter of the Appeals Council in this case, to conduct an independent review, that the remainder of the opinion is not relevant to the analysis. Counsel, that was a soft pitch question. I'm suggesting to you that if you read the whole opinion, however many pages it is, what, 16, 17 pages long, and just focus on the part that the claimant is focusing on, you're missing the forest for the trees. You've got to look at the whole opinion and then say at the end of the opinion, am I satisfied that the second ALJ gave it an independent look? And I think your answer has to be yes. Well, the government would certainly not object to a reversal on that basis. And as to the similarities or dissimilarities in the opinion, I can give the Court even more comfort. For example, ALJ Kennedy found that the claimant's restriction was, lifting restriction was 20 pounds. ALJ Myers found that it was 10 pounds. ALJ Kennedy found that the residual function analysis capacity included occasional kneeling. ALJ Myers said no kneeling. ALJ Kennedy said no concentrated exposure to hazards. ALJ Myers said no hazardous conditions. So there's meaningful differences that reflect that, you know, as a couple of us were trying to explain, it's not just a matter of reciting historical facts, but there's different analysis here. There is different analysis, but I want to caution the Court about the import of adopting the reading of Cody that would be, in our sense, the more extreme, as we've said in our brief version. Right now, the universe of cases that potentially presents a Lucia or Cody problem is closed. And if the rule is that a disappointed litigant can look at his or her decision and sort of feel as a gestalt matter that it's too similar and infer from that similarity that the presumption of regularity should be discarded and that the literal words of the ALJ's opinion are worth nothing. Counsel, could you pause, please? Yes. Originally you wanted to reserve three minutes. You're down to 55 seconds. I mean, I'll give you an extra two minutes, but you should either stop now or conclude your time, and I'll add that. Thank you. Judge Gould, I'll just finish my sentence. If the rule is that someone who feels that the next decision they got is just too much like the last one that they got and that as a matter of the appointments clause, that's a colorable challenge, we are in a universe of cases that is far beyond what Cody or Lucia ever contemplated. You're basically arguing there's no end to it. Yes. Thank you. Okay. Thank you, counsel. I'm James Tree, attorney for Ms. Galvez. She's had her disability case going for 15 years now. I was just going to say, how many times have we been around the block on this case? Oh, man, so many. So many decisions from so many different places. How much process does she need? The interesting thing to me is that what Judge Shea, he picked up on this, I think, at the federal court, was that the most important issue here is the medical opinion evaluation. Now, that's the key to the case because in Kennedy 1, which was the first ALJ decision, it was found he didn't properly evaluate the medical evidence and that he needed to evaluate the medical evidence, including Dr. Ider and Dr. Heise's opinion. Yes, I appreciate that, but why does that matter here? We started over with a new ALJ. The reason that it matters is because in Kennedy 2, they found that Kennedy violated the law of the case. He didn't do what the district court ordered and evaluate the medical evidence. I appreciate that, too, but I'm still wondering about why it matters once ALJ Myers takes over. Why that matters is in Meyer 1, the same thing happened. He didn't evaluate. He violated the law of the case. He didn't evaluate the medical opinions. So when we get to Meyer 2 and what we're talking about in this case, and Judge Shea said that he failed to properly assess the medical opinions. That's the key of the case. And that's what he, when he looked at those medical opinions, that's the copy and paste. It's not, you can look at things and there's some differences.  There's a different residual functional capacity. There's a different weighing of a couple of the expert opinions. It's not. Yeah, there's some differences, but the key of this case is evaluation of the medical opinion. But I thought part of the second ALJ's concern was her activities of daily living in the fact that she was working part time in order to supplement her income. Those are pretty damaging pieces of evidence to contravene what she's saying to the doctors when she goes to solicit their opinion. Yeah, no, she hadn't misrepresented to the doctors what she was doing. I understand. I'm not suggesting that she was lying. All I'm suggesting is that the second ALJ looked at what is, in my experience, a pretty active claimant by virtue of some of the employment that she had during the period she claims that she was disabled. And the ALJ concluded that she wasn't as limited in her activities as she was telling her doctors. She didn't work at all in 2011 up through this, through that. I'm actually referring to the period much more recently than that. I think around the 2019, 2017 to 19 timeframe, didn't she work part time as a home care giver? Yeah, in the home taking care of elderly people. Well, somebody in the home that where she could take breaks whenever she needed it below substantial gainful activity. So that's really, to me, is a non-issue in this case because what we're looking at in this case is, was this decision tainted in the evaluation of the medical evidence testimony and the medical evidence opinion? But she doesn't deny those activities, right? I mean, in my experience, it's unusual to have any work history during the period of disability. I've had thousands of cases where my clients have worked part time. I encourage them to do it, particularly home health care is a good one because they can take breaks as they need it. And if they work above SGA, then we can ask for a closed period. If they work below SGA, we can ask for continuing benefits. Sure. And so I think it's a good thing that somebody tries to do that. Of course, she had. I'm not faulting her for doing it. I'm just suggesting that if we're reviewing this for substantial evidence, as I think we must, then it's hard for me to fault the ALJ for saying, oh, I'm not sure that she's as disabled as what she's claiming. So Judge Shea didn't get to the issue of the subjective complaint? Right. I realize he never reached the merits because he basically decided the case on the basis of the appointments clause violation. Could we follow up on the appointments clause violation? Because I'm pretty concerned about issuing an opinion that would suggest a bunch of busy work to just change some words around. For me, it is quite significant. So what has been repurposed? If we're talking about historical facts or anything historical, one wouldn't expect that's going to change. So that's a lot less meaningful to me than really looking at whether there's different reasoning or conclusions that are reached, as I think I've indicated. So the extremes on either end are problematic, in my view. The district court here said the ALJ erred by relying on portions of a decision tainted by an appointments clause violation. So I think you heard opposing counsel's argument about making sure this universe is finite. That's her concern. And it shouldn't be enough that somebody's dissatisfied with their opinion. We've got Cody, and Cody talks about, and the Sixth Circuit case in Jones Brothers is really looking more, I think, at a more granular level and asking whether we've really got a fresh read. That, to me, cries out for a test that directs courts to look at the sort of totality of the circumstances and a bunch of factors. I don't know if you agree with anything that I just said. But if that's where I'm headed, I'd like you to tell me why I shouldn't be going there and what kinds of factors should be considered. Well, I'd like to just say, first off, if the test was simply that you need a different ALJ properly appointed, we would lose. Right. But that's not the test. That's not the issue, though. We're looking for a fresh look after Cody.  A de novo hearing. And Cody at page 968. But your client had a couple de novo hearings in this case. He had a couple of hearings. He should have had a de novo hearing, but it wasn't because they adopted so much of the decision from Kennedy. The hearing itself, she had new hearings. She had two, depending on how you count, she had two or two and a half with ALJ Myers. One of them she didn't appear, and so then they did some work and then continued. So she's got a new ALJ that's uncontested. She's got a couple of new hearings. She had an opportunity to present new evidence. Right. This ALJ came to a different RFC and weighed some of the medical testimony differently. Why shouldn't I conclude this is enough and this is a fresh look? Because Cody says at page 962, I quote, Lucia requires an adjudication untainted by an appointments clause violation. Right, and the district court considered this to be tainted as I started, you know, and he considered it to be tainted because there's maybe 40 percent of it is recycled. Not verbatim, but I'm going to say repurposed. Much of that is historical. Why wasn't that enough? The district court focused in on the medical opinions and said that's where he took this stuff from Kennedy was on the medical evidence. One thing to recite what the experts said, that didn't change what the experts said, but it's another thing, right, to have adopted the reasoning or the balancing or weighing, and that's not verbatim. That's new. So why isn't that meaningful? It isn't, in my opinion, because Dr. Hesse, who was the treating physician, had said he didn't understand why she had all this pain. He didn't see it objectively. Dr. Hesse then referred her to a rheumatologist in our community, Dr. Wendy Eider. Dr. Eider then performed tender points and gave an affirmative diagnosis of fibromyalgia. That then confirmed the pain that she had throughout her body and gave an objective balance for it. But Meyers still adopted Kennedy's decision pre-Dr. Eider that Dr. Hesse was misplaced because he wasn't sure what was the cause of this pain. Dr. Hesse – oh, I'm sorry. If we reverse and send it back, then presumably the district court could send that back down to the agency to look at the merits. Most surely the way I read Judge Shea's opinion is that that would happen because, matter of fact, he said medical opinions, plaintiff established consequential error on the medical opinion issue. So he actually reached the issue on medical opinions. He did reach the merits. It was tied to the Appointment Clause via the tainting of the Appointment Clause. To me, those are two separate questions. Maybe your argument, I guess, is they're interrelated. But what's your answer to the question that I asked your opponent with regard to a magistrate judge issuing a report and recommendation that a district court adopts in full and saying I've given it an independent view but I agree? Yeah, so my distinction is if that magistrate judge was properly appointed, that's great. If the magistrate judge wasn't properly appointed and wasn't a proper magistrate judge, then it would be clear error. You're turning this test into almost a we weigh how much of the language is verbatim and decide if it exceeds 35 percent, then it's tainted, 40 percent. But if the 40 percent is history and procedure in the long haul, what difference does it make? If we're satisfied after, I think what I'm really saying is why can't we just give it a totality of the circumstances review? If at the end of reading the opinion we're satisfied that it was given a reasoned and independent look, that's good enough. Yeah, and I think that's what Judge Shea did. He did that. I'm not so sure. I think he was influenced by the fact that there was so much verbatim adoption of language that frankly I don't think needs to be boiler or could be boilerplate without tainting the second review. The way I read Judge Shea was that the reason that that was so important because it was on the ultimate critical issue of evaluating the medical evidence of Dr. Hesse and Dr. Eider, which had been remanded on three times on that very issue previously. And so he combined those. He said there was error in evaluating the medical opinion, and that tainted this decision. And so, yeah, I mean, I'm sure that if this is remanded back to Judge Shea to say, hey, there's no appointment clause thing, evaluate on the merits, he's going to remand it back to evaluate the subjective evidence in the medical opinion. As Judge Christen pointed out, we need to write an opinion that basically tells district judges in Judge Shea's position the first time around, this is how you evaluate an appointment clause challenge where you have a second properly appointed administrative law judge take a new look at the case. What I would suggest is that you use the language from Cody and Lucia that requires an adjudication that's untainted by an appointments clause. But, counsel, they had that. Judge Shea had that, and that wasn't, I mean, they're still looking. I think he did that. Well, our district courts, from our perspective, our district court judges are still sort of dividing into a couple different camps. So if you have anything else in response to Judge Talmadge's question, that would be the time about how we could be helpful to the district. Help us write the opinion. Let me also say, you're over your time by more than two minutes. Okay. What I saw here when I looked at this just recently is the disadvantages. Judge Shea had the briefing on the merits. You don't have the briefing on the merits. And that's the difference because there's clear error in here, to my opinion, on the evaluation that Judge Myers did of the medical evidence. Judge Shea saw that, and then he made a determination. You took your medical evidence from Judge Kennedy's decision. That tainted your decision. And he also said there was error in evaluation of the medical evidence. So if you had that briefing, I think it would fill the gap you're having. The problem I have with your answer, though, is that it assumes that there has to be a complete rewrite of the decision in order to avoid any conclusion that there's a taint. And I'm not sure that the law requires that to cure an appointments clause violation and the resulting quote-unquote taint. Social Security's agency policy in Social Security ruling 19-1P is that the decision needs to be an independent decision. That begs the question of how you show that it was independent. That's what we're struggling with. It would be nice if Social Security just redacted the decision and not let the next ALJ see it. That would remove all doubt. So now we put blinders on the next ALJ? And, of course, that would require a circuit split with a sixth circuit. So that would be tough. I don't think we're going that route. Cody ordered a review untouched by the improper ALJ's decision. So there's no anecdote for this poison? I think it's a fact issue. Is there too much? Is it too much to the merits? The stuff that was adopted from the improper decision? And, see, that's the whole thing is the constitutional design. The courts, Lucia. Under that test, a district judge could never adopt a report and recommendation of a magistrate judge without writing a whole new opinion in order to prove that it was an independent review. And I think our district courts would be really upset with us if we told them that's now their standard. And it shouldn't be because the magistrate judge is properly appointed. And Lucia said. But if the second decision-maker is properly appointed, why doesn't that cure the problem? Because his decision was tainted by the first decision-maker who wasn't properly appointed. So we're going to carve out an area of the law that is unique to Social Security cases. The second decision-maker has to have blinders on and cannot know what the first decision-maker said. We excise all that from the record. Only if that first decision-maker was improperly appointed. That's a circuit split. You're inviting us to enter into a circuit split with a Sixth Circuit in Jones Brothers. That's all I'm going to say because Judge Gould is trying valiantly to get us to stop. Did you get me down? Thank you, Mr. Drew. Thank you. Thank you, counsel. Okay, we'll have rebuttal. I have three quick points on rebuttal. First of all, in terms of the similarity in words, again, we're talking about 1,431 words from a decision that was more than 11,000 words. And Judge Tallman, I think your example from the district court is instructive, and I'd also note the examples we cited in our brief where this court has determined that it, quote, cannot improve on the reasoning of the district court and adopts the decision in full. There's no doubt that that is still a decision of this court that's reviewable on bonk or on cert, not by appeal. District judges love it when we do that, just adopt their decision below as the decision of our court. Well, if there were doubt as to the independence of the decision-maker, which is my second point. Not from this panel, no doubt. I would encourage the court to consider two crucial parts. One, there is nothing in A.L.J. Myers' decision saying that he deferred to the reasoning or even to the summation of the record of A.L.J. Kennedy. It was not the fact that it had previously been decided by another decision-maker that was the utility of reproducing some of the language from the opinion. And again, the figure that I gave to the court as far as the reproduced words, we're not distinguishing among historical sources, common words, et cetera. You think we ought not do that? I'm saying when we look at the independence of a decision and we ask how much of it has been copied, the court made the point that historical material does not raise concerns. And my interest is only to clarify that when we say there is 1,431 words that are the same, we are not distinguishing between historical and other letters? I understood all that. My question was should we? If the court believes that Cody establishes the test it does, then yes, it should. Thank you. And as far as doubt of the independence, if that question is raised, I think there can be no doubt here that A.L.J. Myers examined the record. For example, on the issue of medical expert testimony, I would point to the treatment of the testimony of Nurse McClure. A.L.J. Kennedy gave significant weight to that opinion. A.L.J. Myers gave, quote, some weight to parts of the opinion and, quote, no weight to other parts of the opinion, including on the basis that it was being provided by an R.N. rather than a doctor. And so here, no matter how the case is decided, you simply cannot conclude that what we have is a continuing appointments clause violation on the part of A.L.J. Myers, whom none dispute was properly appointed. Thank you. Counsel, thank you. So that case shall be submitted on the briefs, and the court will adjourn for the day. All rise.
judges: GOULD, TALLMAN, CHRISTEN